IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WANAGET CARABALLO-CEPEDA,

    Plaintiff,

    v.

ADMINISTRACIÓN DE CORRECCIÓN, et al.,

    Defendants.

CIVIL NO.: 13-1135 (MEL)

## OPINION AND ORDER

Pending before the court is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), filed by defendants Estado Libre Asociado de Puerto Rico ("Commonwealth of Puerto Rico") and Administración de Corrección ("Administration of Correction"). ECF No. 10. Wanaget Caraballo-Cepeda ("plaintiff") has yet to file a response in opposition to the pending motion. For the reasons set forth below, defendant's unopposed motion is granted.

Defendants argue under Rule 12(b)(6) that the allegations against them are insufficient to support a claim of violation of constitutional rights which would entitle plaintiff to relief under 42 U.S.C. §1983. When considering a motion to dismiss under Rule 12(b)(6), the court must limit its focus to the allegations of the complaint. Litton Indus., Inc. v. Colón, 587 F.2d 70, 74 (1st Cir. 1978). The inquiry is whether the allegations, accepted as true, show "a plausible entitlement" to the relief requested. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007). To avoid dismissal, a plaintiff must "set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).

Plaintiff essentially claims that for at least the past fifteen years during which he has been imprisoned in various facilities under the Administration of Correction of the Commonwealth of Puerto Rico, he has been deprived of educational services. ECF No. 2. Plaintiff's prayer for relief, pursuant to 42 U.S.C. §1983 includes access to education and damages due to previous denial of education. (D.E. 2 at 6).

Plaintiff's claims for monetary damages against the Commonwealth of Puerto Rico, the Administration of Correction, and the Secretary of Correction in his official capacity are barred by the Eleventh Amendment. The Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." 1 U.S.C. Const. Amend. XI. The Supreme Court of the United States repeatedly has held that the Eleventh Amendment bars suits against a state by its own citizens. See e.g., Edelman v. Jordan, 415 U.S. 651 (1974). The Supreme Court has held that "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).

The Eleventh Amendment immunity, however, is not absolute and may be waived by the state or "stripped away" by Congress. Metcalf & Eddie, Inc. v. P.R. Aqueduct & Sewer Auth., 991 F.2d 935, 938 (1st Cir. 1993). There are four circumstances in which states lose Eleventh Amendment protection: (1) when a state consents to be sued in a federal forum; (2) when a state waives "its own immunity by statute or the like;" (3) when Congress abrogates state immunity; and (4) when "other constitutional imperatives...take precedence over the Eleventh Amendment federal-court bar." Id. at 938 (citations omitted); see also Toledo v. Sánchez, 454 F.3d 24, 31 (1st Cir.

2006). An entity entitled to Eleventh Amendment immunity can waive that immunity in three ways: "(1) by a clear declaration that it intends to submit itself to the jurisdiction of a federal court...; (2) by consent to or participation in a federal program for which waiver of immunity is an express condition; or (3) by affirmative conduct in litigation." Díaz-Fonseca v. Puerto Rico, 451 F.3d 13, 33 (1st Cir. 2006) (citing New Hampshire v. Ramsey, 366 F.3d 1, 15 (1st Cir. 2004)).

A limited exception also exists to bring suit for prospective injunctive relief against state officers in their official capacity. Ex Parte Young, 209 U.S. 123, 160 (1908); Pennhurst, 465 U.S. at 102-03. Any other claims for monetary relief or retrospective injunctive relief are barred by Eleventh Amendment immunity. Id. This exception allows a state official to be sued only to enjoin a continuing violation of federal law. Papasan v. Allain, 478 U.S. 265, 277-78 (1986); Whalen v. Mass. Trial Court, 397 F.3d 19, 29-30 (1st Cir. 2005). Furthermore, "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant." Papasan, 478 U.S. at 278. This limited exception does not apply to suits brought pursuant to state laws. Pennhurst, 465 U.S. at 117-18; Diaz Fonseca v. Puerto Rico, 451 F.3d 13, 43 (1st Cir. 2006); Cuesnongle v. Ramos, 835 F.2d 1486, 1496-97 (1st Cir. 1987).

It is well-settled that "Puerto Rico, despite the lack of formal statehood, enjoys the shelter of the Eleventh Amendment in all respects." Ramírez v. P.R. Fire Serv., 715 F.2d 694, 697 (1st Cir. 1983). Furthermore, "a prison system is an essential arm of the state" and hence, the claims for damages against the Commonwealth of Puerto Rico and the Administration of Correction are barred by the Eleventh Amendment. Camacho v. Commonwealth of Puerto Rico, 2006 WL 1704692, at 1 (D.P.R. 2006) (unpublished). Moreover, damages claims against the Secretary of Correction in his official capacity are also precluded by the Eleventh Amendment.

> In addition to state agencies and institutions, Eleventh Amendment immunity may also attach to suits against state officials "when the state is the real, substantial party in interest." Although, state officials are literally persons, a suit against a state official in his official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself, therefore, immunity attaches to state officials, in their official capacity.

Bernier-Aponte v. Izquierdo, 196 F.Supp.2d 93, 98-99 (D.P.R. 2002) (citations omitted).

Turning now our attention to plaintiff's claim for prospective equitable relief, that is, that he be granted educational services, we must start the analysis by asserting at the outset that the U.S. Supreme Court has repeatedly held that the U.S. Constitution does not explicitly nor implicitly guarantee a right to education. See San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 35–37 (1973) ("Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."); Plyler v. Doe, 457 U.S. 202, 221 (1982) ("Public education is not a 'right' granted to individuals by the Constitution."). Furthermore, "education is [not] a 'fundamental' right that triggers strict scrutiny when government interferes with an individual's access to it." Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 458 (1988); see also Papasan v. Allain, 478 U.S. 265, 284 (1986) (stating that in Rodriguez the "[Supreme] Court declined to apply any heightened scrutiny based on…education as a fundamental right."); Martinez v. Bynum, 461 U.S. 321, 328 (1983).

Moreover, there is no per se right to education in prisons; "[p]risoners have no constitutional right to educational or vocational opportunities during incarceration…." Wishon v. Gammon, 978 F.2d 446, 450 (8th Cir. 1992). It is well established that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." (Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125 (1977) (citing Price v. Johnson, 333 U.A. 266, 285). One of the privileges limited by adult incarceration is education. "[P]risoners do not have a due process right to

4

participate in vocational and educational programs, let alone one of their choosing." Boulware v. Fed. Bureau of Prisons, 518 F. Supp. 2d 186, 189 (D.D.C. 2007).  Additionally, "the unavailability of a program at a particular prison is not an atypical deprivation but rather 'merely leaves the prisoner with the normal attributes of confinement.'"  Id. (citing Tanner v. Fed. Bureau of Prisons, 433 F. Supp. 2d 117, 123 (D.D.C. 2006)).

Imprisonment without access to educational programs does not constitute a cruel and unusual punishment as prohibited by the Eight Amendment.  Rhodes v. Chapman, 452 U.S. 337, 348 (1981) (stating that depriving a prisoner of educational and rehabilitative benefits "does not inflict pain, much less unnecessary and wanton pain; deprivations of this kind are simply not punishments"); Johannes v. Cnty. of Los Angeles, CV 02-03197-SVW VBK (C.D. Cal. Apr. 8, 2011) ("Plaintiff's allegations regarding [denial of access to] vocational/educational programs fail to give rise to a constitutional violation."); Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir.1982) (stating that "[i]dleness and the lack of programs [(e.g. educational programs)] are not Eighth Amendment violations.  The lack of those programs simply does not amount to the infliction of pain."), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).

Although "[t]he absence of rehabilitative programs is not, per se, a violation of the Eighth Amendment," there are circumstances in which denial of access to educational services can play a role in the violation of a prisoner's constitutional rights.  Morales Feliciano v. Romero Barcelo, 672 F. Supp. 591 (D.P.R. 1986).  First, denial of access to education can be one of the components which, when combined with other significant deleterious prison conditions, amount to a cruel and unusual punishment.  "[T]he Administration [of Correction] is under statutory duty to provide [rehabilitative] programs, 4 L.P.R.A. §1112; inmates can earn time credits towards early release by participating in such, 4 L.P.R.A. 1162, 1164, 1165." Morales Feliciano, 673 F. Supp. 619-620.

Consequently, inmates have reasonable expectations for access to these programs and "the unavailability of useful work, study or even recreation in the overcrowded conditions in the system, inflict[s] serious psychological harm on the inmates." Id.  "[W]here none of the physical conditions of confinement meet constitutional standards, the facts of overcrowding, idleness and the threat of violence, *combined* with the continuous frustration of reasonable expectations produced by administrative incompetence, do result in an ascertainable psychological deterioration in the prison population which, we hold, is independently cognizable under the Eighth Amendment." Morales Feliciano, 673 F. Supp. 620 (emphasis added).  Second, a violation of inmates' due process rights can occur if inmates are given access to education and later have this opportunity arbitrarily taken away due to "irregularities in classification or the Administration's inability to provide a safe environment." Id. (citing Garcia v. Batista, 642 F.2d 11 (1st Cir.1981); Wolff v. McDonnell, 418 U.S. 539, 557 (1974)).  In such case, "the plaintiffs are deprived of the liberty interest implicated in the statutorily created expectation that imprisonment can be shortened by work and study without the due process of law." Id.  The present case differs from Morales Feliciano.  Plaintiff does not allege that any other prison conditions, independently or combined with his claim for educational services, violate his constitutional rights.  The complaint is also silent as to whether he has ever received educational services while in custody of the Administration of Correction.  Plaintiff merely states that he was admitted into the state prison system in 1993 and has not received education for "more than 15 years." (D.E. 2, at 5).

      Finally, "if [a] state provides educational or vocational opportunities to its prisoners, it cannot deny equal access to such services…" to similarly situated inmates absent a rational basis. Wishon, 978 F.2d 450; see also Joseph v. U.S. Fed. Bureau of Prisons, 232 F.3d 901 (10th Cir.

6

2000); Little v. Terhune, 200 F. Supp. 2d 445, 450 (D.N.J. 2002).  However, plaintiff in the present case has not alleged such facts in his complaint that would trigger an equal protection claim.

Because plaintiff failed to allege specific facts that would "plausibly give rise to an entitlement to relief," Iqbal, 556 U.S. at 679, defendants' motion to dismiss (D.E. 10) is hereby **GRANTED**.  The causes of actions against the Commonwealth of Puerto Rico, the Administration of Correction, and the Secretary of Correction are **DISMISSED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of July, 2013.

s/Marcos E. López  
U.S. Magistrate Judge
